IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Dolores White, individually and as parent and natural guardian of K.P.W., a minor; William A. Love, individually and as Administrator of the Estate of Sheena White, deceased; and K.P.W., a minor | : : : : : : |
| v. | : : : |
| Ronnie McGill; Southeastern Pennsylvania Transportation Authority; Pasquale T. Deon, Sr.; Joseph M. Casey; Scott Sauer; Michael R. Liberi; New Flyer Industries Canada ULC; New Flyer of America, Inc.; and Roscoe, Inc. | : : : : : : : : : |
| Appeal of: Southeastern Pennsylvania Transportation Authority; Ronnie McGill; Pasquale T. Deon, Sr.; Joseph M. Casey; Scott Sauer; and Michael R. Liberi | : : : : : No. 186 C.D. 2024 : Argued: June 3, 2025 |

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON                          FILED: June 30, 2025


          Southeastern Pennsylvania Transportation Authority (SEPTA), Ronnie McGill (Driver), and Pasquale T. Deon, Sr., Joseph M. Casey, Scott Sauer, and Michael R. Liberi (SEPTA Officers) (collectively, SEPTA Parties) appeal from orders of the Court of Common Pleas of Philadelphia County (Trial Court) entered on February 1, 2024, that granted the post-trial motion of Dolores White (White), individually and as parent and natural guardian of K.P.W. (Son), a minor; William

A. Love, individually and as Administrator of the Estate of Sheena White (Mother), deceased; and Son, a minor (collectively, White Parties) and denied the SEPTA Parties' post-trial motion. After careful review, we reverse the Trial Court's orders and remand this matter to the Trial Court for molding of the verdict.

## I. Background

In 2014, Mother and Son were crossing an intersection in Philadelphia when Driver, operating a SEPTA bus, made a left turn and struck them. Mother died instantly and Son sustained injuries. The White Parties filed a civil action in the Trial Court against the SEPTA Parties, the manufacturer of the bus,[1] and Roscoe, Inc. (Roscoe), the manufacturer of the bus's mirror system.

SEPTA and Driver conceded that Driver was negligent and that his negligence was a factual cause of the accident. Reproduced Record (RR) at 686a. The White Parties, however, also attributed the accident partly to the bus's Roscoe mirror system, which allegedly obstructed Driver's view and created a blind spot during a left turn. The White Parties further asserted that the SEPTA Officers were negligent in allowing continued use of the Roscoe mirror system despite driver complaints, allegedly in violation of a provision in SEPTA's enabling statute, known as the Metropolitan Transportation Authorities Act (MTAA), 74 Pa.C.S. §§ 1701-1785, Section 1741(a)(32) of which authorizes SEPTA "[t]o do all acts and things necessary for the promotion of its business and the general welfare [and] to carry out the powers granted to it by this chapter or any other statute." 74 Pa.C.S. § 1741(a)(32). The White Parties posited that SEPTA and the SEPTA Officers could

---

[1] The bus manufacturer settled the claims against it before trial and is no longer a party to the action, although it remained on the verdict sheet for purposes of the jury's allocation of liability percentages among the various defendants.

be held liable for conduct by the SEPTA Officers purportedly outside the scope of SEPTA's enabling act. Therefore, the White Parties reasoned, SEPTA was not entitled to sovereign immunity in relation to the acts of the SEPTA Officers. The Trial Court allowed the White Parties to pursue this theory over SEPTA's objection when the case proceeded to a jury trial.

At trial, the jury found various defendants liable and awarded $1,500,000 to Son for his injuries, $1,500,000 to Son as damages for Mother's wrongful death, $1,150,000 to Mother's estate for economic loss (survival action), and $500,000 to White as damages for Mother's wrongful death. *See* RR at 677a-78a.

The Trial Court specifically instructed the jury that the SEPTA Officers were at all times acting as employees of SEPTA and in furtherance of its interests, and that if they were found negligent, SEPTA would be liable for that negligence, but that if they were found not negligent, then no liability could be imposed upon SEPTA for their conduct. RR at 2151a-52a; 1925(a) Op. at 19-20 & 20 n.4. The parties were satisfied with the jury instructions. RR at 2152a. Despite the Trial Court's explicit instruction, however, the jury apportioned 0% liability to the SEPTA Officers but, inconsistently, apportioned 23% liability to SEPTA on behalf of the SEPTA Officers. RR at 678a. The jury also apportioned 2% liability to Driver, 60% to SEPTA on Driver's behalf,[2] and 15% to the bus manufacturer. *Id.* No liability was apportioned to Roscoe. *Id.*

After the verdict was read, the Trial Court brought to the parties' attention the apparent inconsistency in the jury's apportionment of 0% liability against the SEPTA Officers while apportioning 23% liability against SEPTA on

---

[2] The apparent inconsistency in the apportionment of liability to Driver and SEPTA has not been raised in this appeal.

3

their behalf. RR at 2159a. When the White Parties' counsel disagreed that the verdict sheet was inconsistent, the Trial Court dismissed the jury. Opinion of the Trial Court, filed July 10, 2024 pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a) (1925(a) Opinion), at 20; *see also* RR at 2159a-60a.

SEPTA then moved for judgment notwithstanding the verdict (j.n.o.v.) regarding the jury's imposition of 23% liability against SEPTA on the SEPTA Officers' behalf where the SEPTA Officers themselves were found not liable. RR at 2161. The White Parties opposed the motion, insisting the jury verdict could only be read as meaning that the jury had properly found SEPTA itself liable on behalf of unnamed employees. *See id.* at 2159a-65a. Notably, the White Parties requested neither a new trial nor any molding of the verdict to cure the purported inconsistency, relying instead on their argument that the verdict should stand as rendered. *See generally id.* Recognizing that there were no claims against the SEPTA Officers in their individual capacities, that SEPTA could be liable only vicariously on their behalf and only if the SEPTA Officers had been negligent in their official capacities, and that the jury had found the SEPTA Officers were not negligent, the Trial Court granted the SEPTA Parties' motion for j.n.o.v. and, at the suggestion of their counsel, reapportioned liability as 85% jointly against Driver and SEPTA on Driver's behalf,[3] and 15% against the bus manufacturer.[4] *Id.* at 2165a-66a.

---

[3] The reallocation, therefore, preserved the total 85% liability (62% + 23%) the jury had imposed vicariously against SEPTA. As discussed further above and below, the significance of the change in the allocation of liability is that the verdict against Driver and SEPTA on Driver's behalf is subject to a damage cap, which the White Parties maintain would not apply to the damage award against SEPTA on behalf of the SEPTA Officers.

[4] The trial court was not asked to and did not adjust the jury's finding of 0% liability on the part of Roscoe, and no party has challenged that part of the verdict.

The White Parties' counsel took no definite position against the reallocation. *See id.* at 2166a. The following colloquy occurred between the Trial Court and the White Parties' counsel:

> THE COURT: So, I mean, you actually lose nothing if you look at the percentages, because if the 23 percent is applied to the negligence of [Driver] and what they said SEPTA was responsible for and, obviously, it's the same theory, that the negligence is of Driver is imputed to SEPTA, then you can collect 85 percent of the verdict and then the 15 percent attributable to [the bus manufacturer], you know the situation with that. You are really not losing anything.
>
> [WHITE PARTIES' COUNSEL]: I'm just not equipped to respond to that, to be honest with you. But if that's your opinion, I accept it.
>
> . . . .
>
> THE COURT: The money is the same. You understand that?
>
> [WHITE PARTIES' COUNSEL]: I accept that. I didn't do it for the money. I did it for the theory.

*Id.* at 2165a-66a.

The SEPTA Parties filed post-trial motions pointing out that in granting j.n.o.v., the Trial Court had eliminated all liability of the SEPTA Officers and SEPTA on their behalf. *Id.* at 687a. The SEPTA Parties argued that the Trial Court should have granted the SEPTA Parties' earlier motions to narrow the issues for trial, for summary judgment, for a nonsuit, and for a directed verdict in favor of those parties.[5] *Id.* at 688a.

_____

[5] We note that the SEPTA Parties properly did not seek post-trial relief regarding the inconsistent verdict at that time, inasmuch as at that point in time, the Trial Court had molded the

5

The SEPTA Parties additionally maintained that the Trial Court had erred in allowing the jury to assess damages beyond the statutory limitations imposed by Section 8528 of the segment of the Judicial Code commonly known as the Sovereign Immunity Act,[6] 42 Pa.C.S. § 8528.[7] They observed that the parties had stipulated both that Driver was negligent in operating the bus and that the White Parties' claims against Driver and SEPTA on Driver's behalf fell within an exception to SEPTA's sovereign immunity pursuant to Section 8522(b)(1) of the Sovereign Immunity Act, 42 Pa.C.S, § 8522(b)(1). RR at 689a. Therefore, the SEPTA Parties reasoned that all damages assessed against Driver and SEPTA on Driver's behalf were subject to the damage limitation in Section 8528(b) of the Sovereign Immunity Act. *Id.* The SEPTA Parties contended that Section 8528 does not permit recovery of any wrongful death damages, so the jury's awards of such damages needed to be eliminated. RR at 690a (citing *Ewing v. Potkul*, 171 A.3d 10, 15 (Pa. Cmwlth. 2017)). Further, the SEPTA Parties maintained that the jury's awards of damages to Son and to Mother's estate had to be reduced to $250,000, respectively, in compliance with the statutory cap imposed by Section 8528, leaving a total damage award of $500,000, less $15,000 which SEPTA had already tendered as an advance

---

verdict to reallocate liability such that there was no longer any verdict against the SEPTA Officers and SEPTA on their behalf as to which the SEPTA Parties could have sought relief.

[6] 42 Pa.C.S. §§ 8521-8528. Although Section 8528 of the Sovereign Immunity Act is not technically in the segment comprising Sections 8521 through 8527 that is titled "Sovereign Immunity," it follows immediately thereafter and is commonly cited as part of the Sovereign Immunity Act because it applies to limit the damages recoverable in tort actions where exceptions from sovereign immunity under Section 8522 of the Sovereign Immunity Act apply.

[7] Section 8528(b) of the Sovereign Immunity Act, discussed further below, limits tort damages against Commonwealth agencies by providing that "[d]amages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of any plaintiff or $1,000,000 in the aggregate." 42 Pa.C.S. § 8528(b).

in 2014. *Id.* at 690a, 1452a & 1455a. The Trial Court denied the SEPTA Parties' post-trial motions. RR at 1457a.

The White Parties also filed a post-trial motion. Pertinent here,[8] they sought a new trial, arguing that the jury's verdict apportioning 23% liability to SEPTA and 0% liability to the SEPTA Officers was irreconcilably inconsistent. RR at 700a; 1925(a) Op. at 20. After argument, the Trial Court issued a written order granting the White Parties' post-trial motion and awarding a new trial. RR at 1458a. In its subsequent 1925(a) Opinion prepared after the SEPTA Parties filed their appeal, the Trial Court explained that the White Parties had waived the issue of inconsistency in the verdict by not raising it at the end of the trial, but the Trial Court granted a new trial *sua sponte* to prevent a manifest injustice to the White Parties. 1925(a) Opinion at 21. The SEPTA Parties filed a motion for reconsideration of the Trial Court's order awarding a new trial, which the Trial Court denied. RR at 1668a.

The SEPTA Parties appealed to this Court from the Trial Court's orders granting the White Parties' post-trial motion and denying the SEPTA Parties' post-trial motions. The White Parties filed an application to quash the SEPTA Parties' appeal. By Order dated June 3, 2024, this Court denied the quashal application without prejudice to the White Parties' ability to refile it after transmittal of the record to this Court and receipt of the Trial Court's 1925(a) Opinion, reasoning that the issues raised in seeking quashal "appear to be so intertwined with the merits of this appeal that quashal of the appeal at this early stage is clearly inappropriate. . . ." 1925(a) Op. at 4-5. The White Parties thereafter refiled their application to quash the appeal.

---

[8] The White Parties also challenged a number of evidentiary and pretrial rulings that the trial court did not address and that are not at issue on appeal.

## II. Issues

On appeal,[9] the SEPTA Parties raise several issues, which we summarize as follows. The SEPTA Parties argue that the Trial Court erred in denying their post-trial motion to mold the jury's damage award consistent with the damage award limitation in Section 8528 of the Sovereign Immunity Act. Further, the SEPTA Parties assert that the Trial Court erred by allowing the White Parties to pursue their claim that SEPTA and its Officers are liable for negligent conduct by the Officers on the theory that negligent acts are outside the scope of SEPTA's authority under its enabling act. Relatedly, the SEPTA Parties assert that the Trial Court erred in ordering a new trial on the basis that the jury rendered an inconsistent verdict by finding SEPTA negligent based on the SEPTA Officers' conduct, while finding the SEPTA Officers not negligent.

In their renewed application to quash the appeal, the White Parties concede that the order granting a new trial is appealable but maintain that the SEPTA Parties' other issues are moot or otherwise non-appealable.

## III. Discussion

### A. The White Parties' Application to Quash the Appeal

Before reaching the merits of the SEPTA Parties' appeal, we must first address the White Parties' renewed application to quash the appeal. The White Parties assert that the SEPTA Parties are not presently entitled to appellate review

---

[9] This Court's review of a common pleas court's order granting or denying post-trial motions is limited to determining whether the common pleas court abused its discretion or committed an error of law. *Redmond v. Pa. Dep't of Transp.*, 194 A.3d 229, 234 n.2 (Pa. Cmwlth. 2018); *Masthope Rapids Prop. Owners Council v. Ury*, 687 A.2d 70, 71 n.2 (Pa. Cmwlth. 1996). "An abuse of discretion exists where the judgment exercised by the lower court is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Masthope*, 687 A.2d at 71 n.2.

8

related either to the White Parties' legal theory that immunity does not apply to negligent conduct by the SEPTA Officers and SEPTA on their behalf, or to the Trial Court's order denying the SEPTA Parties' motion to mold the verdict. The White Parties maintain that the only order properly before this Court is the Trial Court's order granting a new trial.

This Court previously dismissed an earlier application by the White Parties to quash the SEPTA Parties' appeal. *See* Memorandum and Order, June 3, 2024, at 3. Citing Rule 311(a)(6) of the Pennsylvania Rules of Appellate Procedure, this Court observed that the Trial Court's order granting a new trial was appealable as of right. *See* Pa.R.A.P. 311(a)(6) (providing that "[a]n appeal may be taken as of right . . . from . . . [a]n order in a civil action or proceeding awarding a new trial"). This Court also observed that the White Parties "appear to admit . . . that the Notice of Appeal affords review of the appropriateness of the Trial Court's February 1, 2024 order awarding a new trial, but only on the basis the jury entered an irreconcilably inconsistent verdict." Memorandum and Order, June 3, 2024, at 3. Notably, the Court concluded "that the averments made in the Motion to Quash and the Response thereto appear to be so intertwined with the merits of this appeal that quashal of the appeal at this early stage is clearly inappropriate . . . ." *Id.* at 4. This Court denied the motion to quash, but did so without prejudice to the Whites Parties' right to refile it, if appropriate, after transmittal of the record to this Court and receipt of the Trial Court's 1925(a) Opinion. *Id.* at 5. The White parties accordingly renewed their motion to quash the appeal after this Court received the record and the Trial Court's 1925(a) opinion.

In their renewed application to quash the appeal, the White Parties expressly concede that "orders granting a new trial are appealable as a matter of right

9

within the meaning of Pa.R.A.P. 311(a)(6)." Appellees' Motion to Quash Appeal at 6. They again argue, however, that the SEPTA Parties are also seeking review of other, non-appealable interlocutory orders. *Id.* They further posit that the Trial Court's order granting a new trial rendered the SEPTA Parties' post-trial motions both interlocutory and moot. *Id.* at 7-10.

As explained further below, whether the Trial Court erred in granting a new trial is dependent on whether it properly refused to mold the verdict as requested by the SEPTA Parties and to rule as a matter of law that the SEPTA Officers and SEPTA on their behalf were immune from the White Parties' claims. Because those issues are inextricably intertwined with the question of granting a new trial, we must analyze the propriety of a new trial in the context of those issues. Therefore, because analysis of those issues is necessary to a ruling on the SEPTA Parties' appeal from the Trial Court's grant of a new trial, we conclude that those issues are properly before us on appeal.

**B. Molding of the Verdict and the Granting of a New Trial**

In discussing SEPTA's entitlement to sovereign immunity, our Supreme Court has explained:

> Respecting SEPTA, it is clear the MTAA provides that SEPTA exercises its public powers as an agency of the Commonwealth. 74 Pa.C.S. § 1711(a). It is equally undisputed that the MTAA extends sovereign immunity to SEPTA. *Id.* at § 1711(c) (referencing 1 Pa.C.S. § 2310, which states that sovereign immunity continues until "specifically waived" by the General Assembly) . . . .

*Se. Pa. Transp. Auth. v. City of Phila.*, 159 A.3d 443, 453 (Pa. 2017).

The legislature has specifically waived sovereign immunity in certain limited circumstances. Section 8522(b) of the Sovereign Immunity Act provides

10

specific exceptions in which it authorizes tort actions against the Commonwealth and its agencies. Applicable here, Section 8522(b)(1) provides:

> (b) Acts which may impose liability.--The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> > (1) Vehicle liability.--The operation of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S. § 8522(b)(1). The parties have stipulated that Driver was negligent in operating the bus and that the White Parties' claims against Driver and SEPTA on Driver's behalf fell within the Section 8522(b)(1) exception to SEPTA's sovereign immunity. RR at 689a. The SEPTA Parties assert that, in consequence, all damages assessed against Driver and SEPTA on Driver's behalf are subject to the damage limitation in Section 8528(b) of the Sovereign Immunity Act. *Id.* We agree.

First, the SEPTA Parties contend that Section 8528 does not permit recovery of any wrongful death damages, so the jury's awards of such damages needed to be eliminated. RR at 690a. The SEPTA Parties' contention is correct. Section 8528(b) does not authorize an award of damages for wrongful death against SEPTA. *See Ewing*, 171 A.3d at 20 (holding that a decedent's child cannot recover wrongful death damages against a Commonwealth agency); *Ebersole v. Se. Pa. Transp. Auth.*, 111 A.3d 286, 290-91 (Pa. Cmwlth. 2015) (holding that a decedent's parent cannot recover wrongful death damages against a Commonwealth agency, specifically SEPTA). Indeed, during the trial, the Trial Court granted the SEPTA Parties' motion *in limine* to preclude any award of damages for wrongful death and

11

dismissed the wrongful death claims with prejudice. RR at 671a. The White Parties have not appealed from that order or otherwise sought to reinstate those claims. Accordingly, we agree that the verdict should have been molded to eliminate the jury's awards of wrongful death damages to Son and White.

Further, the SEPTA Parties argue that the jury's awards of damages to Son and to Mother's estate must be reduced to $250,000, respectively, in compliance with the statutory cap imposed by Section 8528, leaving a total damage award of $500,000, less the $15,000 SEPTA tendered as an advance in 2014. RR at 671a, 1452a & 1455a. Again, we agree.

Notwithstanding the limited abrogation of sovereign immunity in Section 8522 of the Sovereign Immunity Act, Section 8528(b) of the Sovereign Immunity Act, as noted above, expressly limits tort damages awarded against Commonwealth parties by providing that "[d]amages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of any plaintiff or $1,000,000 in the aggregate." 42 Pa.C.S. § 8528(b). As we have previously determined, White is not entitled to recover wrongful death damages, which were the only damages the jury awarded to her against Driver and SEPTA on Driver's behalf. Therefore, the only two parties entitled to recover any damages against those two defendants are Son and Mother's estate. Each may recover a maximum of $250,000 from Commonwealth parties under Section 8528(b) of the Sovereign Immunity Act.

The Trial Court allowed the White Parties to pursue at trial their theory that immunity did not apply to their claims against the SEPTA Officers and SEPTA on behalf of the SEPTA Officers because the conduct of the SEPTA Officers fell outside what the MTAA authorized. After trial, however, the Trial Court molded

12

the verdict in response to the SEPTA Parties' motion for j.n.o.v. and altered the percentages of liability as found by the jury, reallocating the 23% jury award against SEPTA on behalf of the SEPTA Officers and imposing it instead against Driver and SEPTA on Driver's behalf. Thus, the total liability imposed against Driver and SEPTA on Driver's behalf was increased to 85% while the total liability imposed against the SEPTA Officers and SEPTA on their behalf was reduced to 0%. Consequently, the only damage award remaining was that imposed against Driver and SEPTA on Driver's behalf, which the parties stipulated was subject to sovereign immunity. That immunity has been abrogated in part by Section 8522 of the Sovereign Immunity Act in relation to the operation of motor vehicles, as set forth above. Any damage award pursuant to that abrogation of immunity, however, is limited by Section 8528(b) of the Sovereign Immunity Act. We have no difficulty, therefore, in concluding that the Trial Court erred here in refusing to mold the verdict against Driver and SEPTA on Driver's behalf to a total of $485,000 (the $500,000 cap less the $15,000 advance from 2014).

It necessarily follows that the Trial Court erred in granting the White Parties a new trial against Driver and SEPTA on Driver's behalf. Our conclusion above means that, in a new trial, the White Parties' recovery of damages against those parties would still be statutorily limited to the $500,000 (less the $15,000 advance) to which they are already entitled as a result of the first trial. Accordingly, because the White Parties could not improve their recovery against Driver and SEPTA on Driver's behalf, the Trial Court erred as a matter of law and abused its discretion by granting a new trial against those two parties in these circumstances.

13

**C. SEPTA's Immunity and the Granting of a New Trial**

SEPTA and the SEPTA Officers argue that the Trial Court erred in characterizing the White Parties' outside-the-scope theory as presenting a novel and potentially viable question of law. SEPTA and the SEPTA Officers assert that the White Parties' interpretation of the MTAA, SEPTA's enabling statute, would essentially transform any negligence claim against SEPTA into a cause of action that is not subject to any immunity shield. Consequently, SEPTA reasons, because the White Parties' theory of the case was not cognizable, the Trial Court improperly granted a new trial on that basis. We agree.

The White Parties' legal theory against the applicability of SEPTA's sovereign immunity here begins from the premise that a Commonwealth agency such as SEPTA is entitled to statutorily created immunity only so long as the agency acts within the scope of the powers granted to it by the legislature in the agency's enabling statute. The White Parties theorize that SEPTA's enabling statute, the MTAA, does not authorize SEPTA Officers to do acts that fail to promote the business and general welfare of SEPTA, such as negligently approving ineffective safety equipment on buses, like mirrors allegedly creating blind spots that subject pedestrians to a foreseeable risk of being struck by a bus.

In its Rule 1925(a) Opinion, the Trial Court defended its refusal to conclude as a matter of law that SEPTA and the SEPTA Officers were immune from the White Parties' claims of alleged negligence relating to the bus's Roscoe mirrors. Relying on pretrial rulings on the issue, the Trial Court held that the White Parties were entitled to pursue their outside-the-scope theory of liability under the law of the case. 1925(a) Opinion at 8. Further, citing centuries-old legal authority on the theory of common law, the Trial Court suggested that, although courts "cannot make

14

laws, they can mould [sic] the forms of the ancient laws to the exigency of the new case." *Id.* at 9 (quoting *Reed v. Garvin's Ex'rs*, 7 Serg. & Rawle 354, 1821 WL 1898, *4-*5 (Pa. 1821) (additional quotation marks omitted)). The Trial Court accordingly reasoned that "[i]t is conceivable that the Commonwealth Court could find [the White Parties'] theory plausible and effectuate legislative change."[10] *Id.* at 10.

The Trial Court may have found such an eventuality conceivable, but this Court does not. Pennsylvania law, through the MTAA, the Sovereign Immunity Act, and a uniform body of developed case law, is clear and settled that the Commonwealth and its agencies, specifically including SEPTA, enjoy sovereign immunity except where the legislature has expressly abrogated it. *See Se. Pa. Transp. Auth.*, 159 A.3d at 453 (first citing 74 Pa.C.S. § 1711(a) & (c); and then citing 1 Pa.C.S. § 2310); *Bubba v. Pa. Dep't of Transp.*, 61 A.3d 313, 316 (Pa. Cmwlth. 2013) (first citing Section 8521(a) of the Sovereign Immunity Act, 42 Pa.C.S. § 8521(a); and then citing *Powell v. Drumheller*, 53 A.2d 619 (Pa. 1995)). This immunity can be waived only to the extent provided by legislative action, and any statute abrogating sovereign immunity must be strictly construed. *Davidow v. Anderson*, 476 A.2d 998, 1000 (Pa. Cmwlth. 1984) (quoting Section 8522(a) of the Sovereign Immunity Act, 42 Pa.C.S. § 8522(a)); *see also* 1 Pa.C.S. § 2310 (providing that sovereign immunity continues until "specifically waived" by the legislature). Nothing in the principles of common law would allow this Court to usurp the function of the legislature in order to abrogate any aspect of sovereign immunity in direct contravention of the legislature's clear, express statutory language. We have no hesitation in refusing to do so.

---

[10] The Trial Court charitably characterized the White Parties' legal theory as "novel." RR at 2166a.

15

Section 8522(a) of the Sovereign Immunity Act, 42 Pa.C.S. § 8522(a), is not an ancient law, and its language is clear. To be viable, a claim of negligence against a Commonwealth agency must fit within one of the exceptions to sovereign immunity expressly granted by the legislature in Section 8522(b) of the Sovereign Immunity Act. The parties here agree that Driver and SEPTA on Driver's behalf are subject to the exception in Section 8522(b)(1) relating to operation of a motor vehicle. The other specific listed exceptions pertain to acts of health care employees of Commonwealth agency medical facilities or institutions; care, custody or control of personal property in the possession or control of Commonwealth parties, except claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials; dangerous conditions of Commonwealth agency real estate, sidewalks, and highways; potholes and sinkholes on highways under the jurisdiction of Commonwealth agencies in certain circumstances; care, custody or control of animals in the possession or control of a Commonwealth party; sales of liquor at Pennsylvania liquor stores to minors or visibly intoxicated persons; acts of members of the Pennsylvania National Guard activities; acts relating to distribution of toxoids or vaccines by a Commonwealth agency in certain circumstances; and negligent acts or omissions by a Commonwealth party resulting in conduct constituting sexual abuse. *See* 42 Pa.C.S. § 8522(b). The White Parties do not argue that the alleged conduct of the SEPTA Officers fell within any of the enumerated exceptions in Section 8522(b). The White Parties' sole legal theory in favor of abrogating SEPTA's sovereign immunity as related to actions of the SEPTA Officers in their official capacities is the assertion that the SEPTA Officers were acting outside the scope of their statutory authority under the MTAA because their judgment decisions concerning the use of the Roscoe

16

mirrors on SEPTA buses failed to promote the business and general welfare of SEPTA. In effect, the White Parties assert that SEPTA and the SEPTA Officers must have been acting outside the scope of their statutory authority because they were negligent and negligence is not within their statutory authority. We agree with SEPTA and the SEPTA Officers that recognizing such an exception to sovereign immunity would swallow the rule and eliminate all sovereign immunity from all claims of negligence. That was plainly neither the legislature's intent nor the effect of the clear language of the MTAA and the Sovereign Immunity Act.

It is beyond cavil that SEPTA, acting through the SEPTA Officers in their official capacities, possesses authority to assess and make judgment decisions concerning the safety equipment in SEPTA buses, including the Roscoe mirrors at issue, under its broad statutory authority conferred by Section 1741(a) of the MTAA, which imbues SEPTA with "all powers necessary or convenient for the carrying out of the purposes of [the MTAA]." 74 Pa.C.S. § 1741(a); *see also* Section 1741(a)(32) of the MTAA, 74 Pa.C.S. § 1741(a)(32) (authorizing SEPTA "[t]o do all acts and things necessary for the promotion of its business and the general welfare [and] to carry out the powers granted to it by this chapter or any other statute").

Our Supreme Court has explained that the purpose of SEPTA under the MTAA is "to operate a transportation authority." *Se. Pa. Transp. Auth. v. Bd. of Revision of Taxes*, 833 A.2d 710, 717-18 (Pa. 2003). Just as with regard to tort immunity, our Supreme Court in *Board of Revision* held that SEPTA is immune from real estate taxation on property owned by SEPTA to the extent the property is used as part of "SEPTA's operations." *Id.* at 719. The Supreme Court held that SEPTA was not immune from real estate taxes on the portion of its building that it leased to commercial entities in order to raise revenue because, although the MTAA

17

authorized such activity, "clearly the leasing of real estate, solely to raise revenue, is not an activity connected to SEPTA's purpose," *i.e.*, operating a transportation authority. *Id.* at 719-20.

Here, by contrast, an allegation that the SEPTA Officers may have erred in determining the mirrors were safe and/or safely placed, even assuming that any such error could otherwise be found to constitute negligence, does not remove the underlying exercise of official judgment from the scope of SEPTA's statutory authority and its purpose of operating a transportation authority, so as to fall within any of the specific enumerated exceptions to sovereign immunity created by the legislature. To the contrary, decisions concerning equipment safety fall squarely within SEPTA's purpose of operating a transportation system. Accordingly, the SEPTA Officers and SEPTA on their behalf are indisputably entitled to sovereign immunity from the White Parties' claims against them here, and the Trial Court erred as a matter of law by allowing a negligence claim against SEPTA and the SEPTA Officers relating to the bus mirrors to reach a jury. That being the case, the Trial Court necessarily erred by awarding a new trial to the White Parties by granting their post-trial motion based on the inconsistency of the jury's verdict in finding the SEPTA Officers not negligent but finding SEPTA itself negligent on their behalf. The White Parties were never legally entitled to pursue that claim in the first place.

Moreover, we note with approval the Trial Court's acknowledgment that the White Parties failed to properly preserve their motion for a new trial based on inconsistency in the verdict. 1925(a) Opinion at 21. In an extended discussion with the Trial Court and the SEPTA Parties' counsel after trial, the White Parties' counsel made no mention of seeking a new trial. Instead, the White Parties' counsel argued that the verdict sheet could be read as having been correctly completed and

18

that the jury could properly have declined to impose personal liability on the SEPTA Officers while still imposing liability against SEPTA. *See* RR at 2159a-66a. Having failed to make a timely request for a new trial, the White Parties failed to preserve that issue.

Nonetheless, the Trial Court, after initially granting the White Parties' post-trial motion seeking a new trial, posited in its 1925(a) Opinion that it had really granted a new trial *sua sponte* because it was necessary to avoid manifest injustice to the White Parties arising from the failure to preserve a request for a new trial. We disagree.

Our Supreme Court's opinion in *Temple v. Providence Care Center, LLC*, 233 A.3d 750 (Pa. 2020), offers instructive analogies to the instant case. Like this case, *Temple* involved an appeal from a trial court's order granting a new trial. On appeal, the Superior Court concluded that, even though the defendant had waived its opportunity to ask for a mistrial, the trial court properly granted a new trial *sua sponte* based on the same argument the defendant raised in its post-trial motions. *Id.* at 752. After granting *allocatur*, our Supreme Court reversed the Superior Court's decision because the defendant "did not preserve its request for a mistrial and because the trial court did not grant, and could not have granted, a new trial *sua sponte* based upon the unpreserved request for a mistrial" in the circumstances of that case. *Id.* at 753. Comparing this case to *Temple*, we reach the same conclusion here.

In *Temple*, the plaintiff's counsel asked a question and elicited an answer from an expert witness on subject matter the trial court had precluded from introduction at trial. The defense objected but did not seek a mistrial. 233 A.3d at 755. Then, during closing argument, the plaintiff's counsel discussed the same

19

precluded subject matter again. In response to the defense's objection, the trial court sustained the objection and offered to give a corrective instruction to the jury, saying "I don't know how else I can address it." *Id.* at 756. Still, the defendant's counsel did not request a mistrial, "instead implicitly agreeing that a cautionary instruction would be sufficient." *Id.* After the jury returned an unfavorable award, however, defense counsel moved for a mistrial, asserting that the plaintiff's "closing argument was 'clearly improper, and . . . a curative instruction . . . has not[,] obviously[,] remedied the situation . . . .'" *Id.* at 757. The trial court denied the motion without prejudice to the defendant's ability to reraise it in a post-trial motion, and the defendant did so. *Id.* The trial court granted a new trial on several grounds, including that the damage award was so contrary to the evidence that it shocked the court's sense of justice and that the plaintiff's references to the precluded issue at trial had prejudiced the defendant. *Id.* at 757-58. In response to the plaintiff's assertion that the defendant had waived any request for a new trial, the trial court suggested the issue was preserved because defense counsel had timely objected to the improper evidence and closing argument. *Id.* at 758. The trial court stated, in summary, that it ordered a new trial because it "concluded that 'the cumulative effect of the errors in th[e] trial . . . produced something other than a just and fair result.'" *Id.*

After the defendant appealed, however, the trial court issued a 1925(a) opinion in which it expressed somewhat different justifications for a new trial, stating that if the only issue had been the excessive verdict, it would not have granted a new trial and that the real issue was the plaintiff's "counsel's refusal to follow the rules, and his commingling of arguments regarding compensatory and punitive damages . . . ." *Temple*, 233 A.3d at 758. The trial court explained that, because of

20

the cumulative effect of all the errors at trial, it had simply come to "believe the trial was not fair." *Id.* (internal quotation marks omitted).

The Superior Court partly overturned the trial court's holding and concluded that the defendant had failed to preserve its request for a new trial by failing to make a timely request for a mistrial. *Temple*, 233 A3d at 759. The Superior Court opined, however, that the defendant's failure to preserve the issue did not prevent the trial court from ordering a new trial *sua sponte*. *Id.* The Superior Court posited that, in any event, it was evident that the trial court had "felt compelled to grant a new trial independent of" the defendant's post-trial motion. *Id.*

On review, the Pennsylvania Supreme Court began by observing that the application of waiver principles is a question of law over which an appellate court's standard of review is *de novo* and its scope of review is plenary. *Temple*, 233 A.3d at 760. The Supreme Court then explained that Pennsylvania law applies "a strict waiver principle" that requires specific preservation of an issue in order for an appellate court to review errors occurring at trial. *Id.* The Supreme Court pointed to "a number of reasons for requiring that a specific objection be made, including giving trial courts the first crack at correcting the error, the inefficiency in having appellate courts review errors where there was no trial court ruling, and the need to focus appellate courts upon issues actually preserved." *Id.* In defense of the harshness of the strict waiver rule, our Supreme Court observed further:

> Perhaps at an earlier stage of our jurisprudential development[, disregarding waiver in order to correct a basic and fundamental error] could be justified. Today, however, there is no excuse for and appellate courts should not encourage less than alert professional representation at trial . . . . Previously, an unprepared trial lawyer [could] look[] to the appellate court to compensate for his trial omissions . . . . In the modern era, in line with the inherent nature of our adversarial system, we recognized that the

21

parties themselves should be held responsible for their own mistakes (or purposeful strategies).

While *Dilliplaine* [*v. Lehigh Valley Trust Co.*, 322 A.2d 114 (Pa. 1974),] instituted strict waiver as a matter of common law, we later amended our Rules of Civil Procedure to codify this principle. *See* Pa.R.C[iv].P. 227.1(b) . . . . Rule 227.1(b) forbids a trial court from granting post-trial relief unless:

> (1) if then available, [the grounds] were raised in pre[]trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

> (2) are specified in the [post-trial] motion. The motion shall state how the grounds were asserted in pre[]trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

*Id.*; *see also id.* cmt. ("Subdivision (b)(1) incorporates into the rule the principle of *Dilliplaine* . . . that basic and fundamental error is not a ground for a new trial in the absence of a timely objection at trial."). . . .

*Id.* at 760-61 (quoting and discussing *Dilliplaine*, 322 A.2d at 116-17 (some internal quotation marks omitted)). The Supreme Court also pointed to its decision in *McMillen v. 84 Lumber, Inc.*, 649 A.2d 932, 933-34 (Pa. 1994), in which blatant violations of a trial judge's rulings were "highly prejudicial" such that the prejudiced party was "surely entitled to a mistrial" but waived that right by failing to assert it until the post-trial motion; the Court stressed that "[w]hile [t]he [waiver] rule may be harsh at times, . . . litigation must eventually come to an end." *Temple*, 233 A.3d at 762 (additional quotation marks omitted) (some text bracketed in *Temple*). Accordingly, our Supreme Court concluded that the defendant in *Temple* "waived its ability to ask for a mistrial because it did not 'make timely and specific objections

22

during trial.'" *Id.* (quoting *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1124 (Pa. 2000)).

Our Supreme Court observed in *Temple* that the defendant made a strategic choice to continue the litigation instead of asking for a mistrial on the spot. 233 A.3d at 762. Similarly, here, the White Parties' counsel made a strategic decision at the end of trial to argue in favor of allowing the jury's verdict to stand as it was, rather than asking for a new trial at that time based on the apparent inconsistency in the verdict. Only after the Trial Court granted the SEPTA Parties' motion for j.n.o.v. and reallocated liability from the SEPTA Officers and SEPTA on their behalf to Driver and SEPTA on Driver's behalf did the White Parties seek a new trial by filing their post-trial motion. Consistent with our Supreme Court's analysis and holding in *Temple*, we hold here that, as the Trial Court correctly concluded, the White Parties waived their request for a new trial, notwithstanding the harshness of that result.

The Supreme Court in *Temple* then considered whether the trial court in that case properly exercised "its *sua sponte* authority" to grant a new trial. 233 A.3d at 764. A trial court in a civil case has authority to grant a new trial *sua sponte*, even in the absence of a request, but it may do so "only when the 'interest of justice' requires it." *Id.* at 765 (quoting *Commonwealth v. Powell*, 590 A.2d 1240, 1242 (Pa. 1991)). The *Temple* Court observed that "the 'interest of justice' standard remains a very high threshold, the invocation of which should occur only in rare circumstances." *Temple*, 233 A.3d at 765. Our Supreme Court held, moreover, that

> in an age in which our system relies upon "alert professional representation at trial," *Dilliplaine*, 322 A.2d at 116, when a party recognizes an error, but fails to preserve that error, the bar for a trial court to grant a new trial *sua sponte* must be even higher than the already

23

substantial hurdle of the "interest of justice." In such a situation, a trial court may exercise its *sua sponte* authority only in truly exceptional circumstances. A trial court should make such a ruling only where "exceedingly clear error" results in "manifest injustice." *Ewing* [*v. Tees*], 1 Binn. [450,] 455-56 [(Pa. 1808)] . . . . That "exceedingly clear error" should be of a constitutional or structural nature, and "manifest injustice" must be of such a magnitude as to amount to a severe deprivation of a party's liberty interest. Although these requirements are more difficult to prove than the "interest of justice" standard, we reject the notion that today's decision will result in the virtual elimination of the *sua sponte* power. . . . If a trial court determines that the above-noted conditions are met, then that court can still declare a new trial *sua sponte* based upon that recognized, but unpreserved, error. Additionally, while we do not restrict invocation of this authority to either criminal or civil cases, the point is well taken that such prejudice would seem more likely to occur in the criminal context (though, even in such situations, would be exceedingly rare).

*Id.* at 766 (footnote omitted).

In *Temple*, our Supreme Court concluded that the defendant "[did] not claim [the plaintiff's] inability to abide by the trial court's instructions deprived [the defendant] of any fundamental right that would have been constitutional or structural error. And a review of the record indicates that [the defendant] did not experience a severe deprivation of liberty." 233 A.3d at 767. Likewise, here, the Trial Court, while asserting that the inconsistent verdict created a manifest injustice, did not point to any specific deprivation of a fundamental right that it determined would have been a constitutional or structural error or a severe deprivation of liberty.

Moreover, our review of the record demonstrates that no such manifest injustice occurred here. At the conclusion of the trial, the Trial Court initially granted the SEPTA Parties' motion for j.n.o.v. based on the inconsistency in the jury's apportionment of 23% liability to SEPTA on behalf of the SEPTA Officers

24

when it found the SEPTA Officers themselves not negligent. At the suggestion of the SEPTA Parties' counsel, the Trial Court reallocated that entire 23% liability to Driver and to SEPTA on Driver's behalf, thus leaving the total damage award intact. RR at 2165a-66a. Later, after argument on the parties' post-trial motions, the Trial Court changed tack and granted the White Parties' post-trial motion for a new trial. RR at 1458a. Still later, in its 1925(a) opinion, the Trial Court conceded the White Parties' failure to preserve their request for a new trial but maintained that, notwithstanding that its order had stated it was granting the White Parties' post-trial motion and thereby awarding a new trial, the Trial Court had actually "awarded a new trial *sua sponte* to prevent a manifest injustice to [the White Parties]." 1925(a) Op. at 21. However, as we have determined that no new trial was warranted, we must likewise conclude that no manifest injustice could have resulted from the White Parties' failure to preserve their request for a new trial.

For these reasons, the Trial Court erred as a matter of law when it granted the White Parties' post-trial motion for a new trial. The Trial Court also abused its discretion when it later changed its reasoning and stated that it had granted a new trial *sua sponte*.

## IV. Conclusion

Based on the foregoing discussion, the White Parties' application for relief in the form of a request to quash the appeal is denied. The February 1, 2024 order of the Trial Court granting the post-trial motion of the White Parties and ordering a new trial is reversed.[11] The Trial Court's order of the same date denying

---

[11] We also note that our reversal of the Trial Court's order granting the White Parties' post-trial motion effectively reinstates the Trial Court's order at the end of trial granting the SEPTA

the post-trial motion of the SEPTA Parties is reversed, and this matter is remanded to the Trial Court for molding of the verdict.

_____
CHRISTINE FIZZANO CANNON, Judge

Judge Covey did not participate in the decision in this case.

---

Parties' request to reallocate liability from 62% to 85% against Driver and SEPTA on Driver's behalf and from 23% to 0% against the SEPTA Officers and SEPTA on their behalf.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dolores White, individually and as : 
parent and natural guardian of :
K.P.W., a minor; William A. Love, :
individually and as Administrator of the :
Estate of Sheena White, deceased; and :
K.P.W., a minor :
 :
v. :
 :
Ronnie McGill; Southeastern :
Pennsylvania Transportation :
Authority; Pasquale T. Deon, Sr.; :
Joseph M. Casey; Scott Sauer; :
Michael R. Liberi; New Flyer :
Industries Canada ULC; New Flyer :
of America, Inc.; and Roscoe, Inc. :
 :
Appeal of: Southeastern Pennsylvania :
Transportation Authority; Ronnie :
McGill; Pasquale T. Deon, Sr.; :
Joseph M. Casey; Scott Sauer; : No. 186 C.D. 2024
and Michael R. Liberi :

# **O R D E R**

AND NOW, this 30th day of June, 2025, the application for relief of
Plaintiffs/Appellees Dolores White, individually and as parent and natural guardian
of K.P.W., a minor; William A. Love, individually and as Administrator of the Estate
of Sheena White, deceased; and K.P.W., a minor (jointly, White Parties) in the form
of a motion to quash the appeal of Defendants/Appellants Southeastern Pennsylvania
Transportation Authority (SEPTA), Ronnie McGill (Driver), Pasquale T. Deon, Sr.,
Joseph M. Casey, Scott Sauer, and Michael R. Liberi (jointly, SEPTA Parties) is
DENIED. The February 1, 2024 order of the Court of Common Pleas of

Philadelphia County (Trial Court) granting the post-trial motion of the White Parties and ordering a new trial is REVERSED. The Trial Court's February 1, 2024 order denying the post-trial motion of the SEPTA Parties is REVERSED. This matter is REMANDED to the Trial Court for molding of the verdict to a total award of $485,000 in favor of K.P.W. and William A. Love as Administrator of the Estate of Sheena White, deceased, and against SEPTA and Driver, in accordance with the foregoing Opinion.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge